# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:13-cr-00281 |
| v. | § | Judge Mazzant |
| | § | |
| JULIO JAVIER MENDOZA-GARIBAY | § | |
| (26) | | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Julio Javier Mendoza-Garibay's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1882). The Court, having considered the motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

### I. BACKGROUND

On September 24, 2015, Defendant Julio Javier Mendoza-Garibay ("Mendoza-Garibay") was sentenced to 250 months' imprisonment to be followed by a term of supervised release of 5 years after pleading guilty to Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine (Dkt. #1479). Mendoza-Garibay is serving his sentence at FMC Butner, with an anticipated release date of August 20, 2031. *See* https://www.bop.gov/inmateloc/ (Register Number: 21950-078).

Mendoza-Garibay has submitted two requests for sentence reduction to his wardens. On September 7, 2021, he submitted his first request to the warden at FCI Bennettsville requesting compassionate release based on his concern of his risk of contracting COVID-19 due to his age, weight, and high risk of colon cancer (Dkt. #1893, Exhibit A). The warden denied this request (Dkt. #1893, Exhibit A). On March 22, 2022, Mendoza-Garibay submitted a second request for sentence reduction to the warden at FMC Butner claiming a "Debilitated Medical Condition"

(Dkt. #1893, Exhibit A).  This request was also denied (Dkt. #1893, Exhibit A).  On May 16, 2022, Mendoza-Garibay filed the current motion for compassionate release citing a recent diagnosis of prostate cancer, an "increased risk of cancer," a "history of colon perforation," and elevated blood sugar and cholesterol levels (Dkt. #1882).

The Government opposes the sentence reduction for two reasons. First, the Government argues that Mendoza-Garibay made no request to any warden for compassionate release regarding his increased blood sugar and cholesterol levels or his history of colon perforation (Dkt. #1893). The Government contends that because of this, Mendoza-Garibay does not satisfy the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) in relation to these claims (Dkt. #1893). Second, the Government concedes that Mendoza-Garibay meets the exhaustion requirement in relation to his prostate cancer diagnosis since he cited a "Debilitated Medical Condition" in his request to the warden at FMC Butner shortly after his diagnosis (Dkt. #1893).  However, the Government contends that he fails to present an "extraordinary and compelling reason" for release and consideration of the factors under 18 U.S.C. § 3553(a) does not merit relief (Dkt. #1893).

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.  Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate

"after considering the factors set forth in § 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984.  Pub. L. 115-391, 132 Stat. 5194.  Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release.  Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A).  Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions.  *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020).  This resulted in underuse and mismanagement.[1]  *Id.*  Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release."  Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination.  Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2]  By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  However, since passage of the First Step Act, the

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020).  And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director.  *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

Sentencing Commission has not updated its guidelines on compassionate release.[3]   This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court.  *See United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a).  In reaching this conclusion, we align with every circuit court to have addressed the issue.").  Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist.  *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining

---

[3] The Sentencing Commission currently lacks a quorum to issue new guidelines.

whether "extraordinary and compelling reasons" exist.  First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added). Second, the Sentencing Commission's policy statement and commentary is still persuasive.  *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").  Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver.  U.S.S.G. § 1B1.13, n.1(A)-(C). Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release.  *See* PS 5050.50 ¶¶ 3–6.  These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[4]  *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist.  First, while rehabilitation alone is

---

[4] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"  *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).

not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[5]  *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation).  If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated.  *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary.  For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking.  *See McCoy*, 981 F.3d at 285 ("As the court observed in Bryant, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A)").  Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the outdated policy warrants relief on a case-by-case basis.  *See id.*[6]

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

---

[5] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community.  Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

[6] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*")

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## III. DISCUSSION

Mendoza-Garibay moves for compassionate release based on health concerns related to prostate cancer, increased blood sugar and cholesterol levels, and a history of colon perforation (Dkt. #1882).   In response, the Government argues Mendoza-Garibay is not eligible for compassionate release because he does not meet § 3582(c)(1)(A)'s exhaustion requirement for at least some of the stated conditions and his medical conditions do not constitute "extraordinary and compelling reasons" (Dkt. #1893).

Although Mendoza-Garibay has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence.   Mendoza-Garibay's motion, therefore, must be denied.

**A.  Mendoza-Garibay Has Met Section 3582(c)(1)(A)'s Exhaustion Requirement.**

Mendoza-Garibay's compassionate release motion may only be considered if he first meets § 3582(c)(1)(A)'s exhaustion requirement.  Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A).  Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request.[7] *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period.").  If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On September 7, 2021, Mendoza-Garibay first sought compassionate release from the warden at FCI Bennettsville citing COVID-19 concerns based on his age, weight, and high risk of colon cancer (Dkt. #1893, Exhibit A).  On March 22, 2022, Mendoza-Garibay again sought compassionate release from the warden at FMC Butner citing a "Debilitated Medical Condition"

---

[7] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

(Dkt. #1893, Exhibit A).  Both requests were denied (Dkt. #1893).  Thus, it would appear Mendoza-Garibay has exhausted his administrative remedies.

That said, in his current motion, Mendoza-Garibay cites increased blood sugar and cholesterol levels and a history of colon perforation, none of which are specifically mentioned in any request to a warden (Dkt. #1882).  The Government contends that because of the later addition of these conditions, Mendoza-Garibay's motion does not satisfy § 3582(c)(1)(A)'s exhaustion requirement.

While Mendoza-Garibay's request to the warden may be deficient for purposes of his motion, the Court notes Mendoza-Garibay's second sentence reduction request was made using a fillable form with limited options (Dkt. #1893, Exhibit A at p. 3).  In completing this form, Mendoza-Garibay was only able to circle "Debilitated Medical Condition," and there was no designated space for him to include any more information regarding his qualifications for sentence reduction (Dkt. #1893, Exhibit A at p. 3).  Even assuming Mendoza-Garibay meant this selection to include his elevated blood sugar and cholesterol levels, thereby exhausting his administrative remedies, it does not change the Court's disposition—as will be discussed below.  Mendoza-Garibay also cites a recent prostate cancer diagnosis in his current motion (Dkt. #1882).  Because he cited a "Debilitated Medical Condition" in his second warden request, which came soon after his prostate cancer diagnosis in January of 2022 (Dkt. #1893, Exhibit A), Mendoza-Garibay meets the statutory requirements with regards to this specific condition.  Thus, Mendoza-Garibay has met § 3582(c)(1)(A)'s exhaustion requirement.

**B. Mendoza-Garibay Has Not Met Section 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Even though Mendoza-Garibay meets the statutory exhaustion requirement, his motion nevertheless fails because he has not established "extraordinary and compelling" reasons for early

release.  Mendoza-Garibay's request for compassionate release turns on his contention that his prostate cancer and other related health conditions, combined with the COVID-19 pandemic, constitutes extraordinary and compelling reasons warranting a sentence reduction.  Mendoza-Garibay's assertion fails because his circumstances are not severe enough to constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

The Court has discretion to decide whether Mendoza-Garibay's conditions present "extraordinary and compelling reasons" warranting a sentence reduction.  *See Shkambi*, 2021 WL 1291609, at *4.  The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Mendoza-Garibay's condition of incarceration.  *Id.* Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law.  *See Brooker*, 976 F.3d at 238.

When considering if a defendant's health condition supports compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction.  *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus.  *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

In the instant case, Mendoza-Garibay fails to show any health conditions that warrant compassionate release.  Mendoza-Garibay suffers from prostate cancer, but this condition is not a terminal illness, and it does not interfere with his ability "to provide self-care within the environment of a correctional facility" (Dkt. #1893, Exhibit A).  According to his doctors, Mendoza-Garibay's health appears stable at this time. Reports from Dr. Ron Allison in Mendoza-Garibay's medical records indicate that he sees the defendant on a regular basis and that he reports the defendant "is feeling well" (Dkt. #1894, Exhibit B).  Dr. Allison indicates that Mendoza-Garibay has a good appetite and good exercise tolerance, and "is doing well under prostate radiation" (Dkt. #1894, Exhibit B).  Indeed, upon his prostate cancer diagnosis, Mendoza-Garibay was designated as a Care Level 4 inmate and transferred to FMC Butner (Dkt. #1893).  This means Mendoza-Garibay is now located in a facility which provides significantly enhanced medical services and limited impatient care.  Thus, his medical conditions can be adequately managed as he remains in his current correctional facility.  Similarly, the Court has not found prostate cancer to be a sufficient medical condition to justify an "extraordinary and compelling reason" for compassionate release, even in cases more severe than Mendoza-Garibay's.  *See United States v. McFadden*, No. 4:17-CR-55, 2020 WL 6531937, at *3-5 (E.D. Tex. June 25, 2020) (finding that although inmate suffered from prostate cancer which required surgical intervention; diabetes; high blood pressure; end-stage renal failure; and COVID-19 concerns, his medical conditions did not justify compassionate release).  Finally, Mendoza-Garibay's age of 57 does not support compassionate release.

Further, Mendoza-Garibay's medical records indicate he has been fully vaccinated for COVID-19 (Dkt. #1894, Exhibit B).  This precludes his eligibility for compassionate release.  *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in

the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)"); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (finding defendant who presented obesity, diabetes, and hypertension, had previously tested positive, but had received the first dose could not meet his burden of establishing that his COVID-19 risk was an "extraordinary and compelling reason").

Weighing the evidence, Mendoza-Garibay's medical conditions are unfortunate, but he fails to prove that his incarceration is "extraordinary and compelling" under the § 3582(c)(1)(A)(i) framework. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").[8]

\* \* \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Mendoza-Garibay has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his Motion must be denied.

---

[8] Given Defendant's failure to meet § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #1882) is **DENIED**.

**SIGNED this 11th day of July, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE