# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | No. 4:13-cr-281(26) |
| JULIO JAVIER MENDOZA-GARIBAY, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Emergency Motion for Compassionate Release - Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(a) as Amended by the First Step Act of 2018 & Amendment 814 (the "Motion") (Dkt. #1945). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On September 24, 2015, Defendant Julio Javier Mendoza-Garibay ("Defendant") was sentenced to 250 months' imprisonment, followed by a term of supervised release of 5 years, after pleading guilty to Conspiracy to Possess with Intent to Manufacture and Distribute Methamphetamine (Dkt. #1479). Defendant is serving his sentence at Ashland FCI, with an anticipated release date of November 23, 2031. *See Find an inmate.*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (Register Number: 21950-078).

On May 16, 2022, Defendant previously moved for compassionate release, stemming from his newly diagnosed prostate cancer and high cholesterol and A1C levels (Dkt. #1882). The Court denied that motion on July 11, 2022 (Dkt. #1896). Almost two years later, on May 9, 2024, Defendant submitted a request to the warden at FCI Butler requesting compassionate release based

on his contraction of cancer and his concern of COVID-19 because of his weak immune system (Dkt. #1945-11). On August 7, 2024, Defendant filed the instant Motion, again relying on his diagnosis of prostate cancer and squamous cell carcinoma and elevated blood sugar and cholesterol levels (Dkt. #1945). The Government did not respond to Defendant's Motion. The Motion is ripe for adjudication, and the Court considers all of Defendant's arguments. *See United States v. Mitchell*, No. 4:04-CR-106-31, 2023 WL 3075941, at *4 (E.D. Tex. Apr. 25, 2023) (noting that the Court construes *pro se* motions liberally).

## LEGAL STANDARD

### I. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. § 3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* §§ 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III. U.S.S.G.'s Policy Statement

### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be:

"metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts

have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying

---

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

**B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))**

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

**C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))**

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. §§ 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released.

*See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the Court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

**D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))**

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

**E. Other reasons (U.S.S.G. § 1B1.13(b)(5))**

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

**F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))**

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served

at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th

353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

### V. The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the Court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

## ANALYSIS

### I. The Exhaustion Requirement

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver after a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). Here, Defendant

---

[8] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

sent a request for compassionate release to the warden on May 9, 2024 (Dkt. #1945-11 at p. 3). The 30-day period lapsed on June 8, 2024, with no response from the warden. Thus, Defendant has exhausted his administrative remedies.[9]

## II. The "extraordinary and compelling reasons" Requirement

The Court will next address the merits of the Motion. The Court has discretion to decide whether Defendant's conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi*, 993 F.3d at 393. Defendant argues the following: (1) his medical circumstances constitute an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1); (2) his family circumstances constitute an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(3); and (3) Defendant's rehabilitative efforts constitute an extraordinary and compelling reason under U.S.S.G. § 1B1.13(d). The Court considers each argument in turn.

### A. Defendant's Medical Circumstances

As stated above, the Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D). Defendant asserts that all four apply to him and that the Court should find these medical circumstances, individually, constitute as an extraordinary and compelling basis for granting his Motion (Dkt. #1945).

First, Defendant argues he is "terminally ill with a life expectancy of less than 18 months" (Dkt. #1945 at p. 4). Specifically, Defendant contends he was diagnosed with "metastatic

---

[9] Even if exhaustion was in question, the Government has not invoked § 3582(c)(1)(A)'s exhaustion requirement and has thus waived any nonjurisdictional procedural objection. *See McLean*, 2022 WL 44618, at *1 (holding that it is an abuse of discretion for a district court to deny compassionate release for failure to comply with § 3582(c)(1)(A)'s exhaustion requirement where the Government did not raise exhaustion). The Government has not called exhaustion into question, so Defendant has met his burden on this threshold requirement.

malignant prostate cancer," for which Defendant asserts "there is no cure," and the "projected life expectancy is 1 to 8 years" for this type of diagnosis (Dkt. #1945-11 at p. 2). Defendant further alleges he was diagnosed with "squamous cell cancer," for which Defendant asserts there is "5 year survival" for less than 35% of those affected (Dkt. #1945-11 at p. 2). Defendant incorporates his medical records into his Motion, which confirm Defendant's various health problems, including his diagnosis of squamous cell carcinoma of skin, malignant neoplasm of prostate, and Stage T1c prostate cancer (Dkt. #1945 at pp. 5, 9).

The Fifth Circuit has stated that "a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion." *McMaryion*, 2023 WL 4118015, at *2 (citing *Chambliss*, 948 F.3d at 692–93). Now, "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required," but some examples include "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." U.S.S.G. § 1B1.13(b)(1)(A).

With respect to the malignant neoplasm of prostate, Defendant argues that he was diagnosed approximately 18 to 24 months late and that his treatment started 19 months later (Dkt. #1945 at p. 8). Because of this, in Defendant's view, his cancer has spread to other organs, and he is experiencing organ failure (Dkt. #1945 at p. 8). However, in the medical records Defendant attaches to his Motion, there is no indication that his cancer has metastasized and no health care provider has determined that Defendant is in organ failure (Dkt. #1945 at p. 9). Accordingly, the Court does not find that his health problems qualify as "a serious and advanced illness with an end-of-life trajectory," under U.S.S.G. § 1B1.13(b)(1)(A).

Defendant next argues he qualifies for compassionate release under U.S.S.G. § 1B1.13(b)(1)(B) because he is suffering from a serious physical or medical condition that limits his ability to provide self-care. Specifically, Defendant argues he cannot "perform all activities of daily living without help from other inmates and thus cannot provide selfcare within a prison environment" (Dkt. #1945 at p. 5). Although Defendant alleges that he is unable to provide self-care because of his ailments, he does not meet his burden of proving this. Self-care is a person's ability to perform normal life activities. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) (noting that because defendant was "able to walk with a cane, dress, bathe, eat, and perform . . . activities of daily living independently," his medical condition did not substantially diminish his ability to provide self-care). Conclusory statements in a motion for compassionate release are insufficient to carry a defendant's burden. *See United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024). In fact, the "ROS" section of his medical records shows no fatigue, fever, unexplained weight loss, weakness, headaches, migraine, trauma, angina, palpitation, syncope, cough, or wheezing (Dkt. #1945 at p. 9). Besides conclusory statements that he can no longer able to perform self-care, Defendant has not shown, through medical records, that he is unable to perform any activities of daily life. Thus, he does not satisfy the medical criteria under U.S.S.G. §1B1.13(b)(1)(B).

Defendant further argues he qualifies for compassionate release under U.S.S.G. § 1B1.13(b)(1)(C) because the conditions at the facility where he was being held at the time of filing, FCI Butner Low, are inadequate for the treatment he requires (Dkt. #1945 at p. 4, 7, 11, 17–20, 25, 27, 36, 38–40, 46–48, 50, 52–55, 57–58 ("The BOP Cancer unit at Butner is 20 years behind the rest of the nation as a hospital.")). However, Defendant no longer resides at FCI Butner Low. He

is now incarcerated at FCI Ashland. *See Find an inmate.*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (Register Number: 21950-078). Thus, the Court will ignore those arguments for purposes of analyzing the criteria under U.S.S.G. §1B1.13(b)(1)(C).

Despite Defendant's assertions that other prisoners have suffered because of the conditions of their incarceration, he did not show the Court that he is not receiving necessary medical care while in prison. A defendant must show that the care he is receiving is insufficient and that he is "at risk of a serious deterioration in health or death" because of it. U.S.S.G. §1B1.13(b)(1)(C). Again, Defendant attached various medical records to his Motion showing the status of his health problems and his continued treatment (Dkt. #1945 at pp. 6–9, 13, 15, 21). However, Defendant has not included any evidence showing the BOP cannot provide him with the care necessary to address his health problems. Thus, the criteria under U.S.S.G. § 1B1.13(b)(1)(C) has not been satisfied.

Finally, Defendant's alleged susceptibility to COVID-19 is not a compelling reason for his release under U.S.S.G. §1B1.13(b)(1)(D). "Fear of COVID doesn't automatically entitle a prisoner to release." *Thompson*, 984 F.3d at 435. Although the COVID-19 pandemic may have disrupted prison operations, it is not currently a compelling reason to grant a compassionate release at this time. The pandemic is over. Accordingly, the Court finds that Defendant's medical circumstances do not constitute an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1).

### B. Defendant's Family Circumstances

Defendant also argues his family circumstances are an extraordinary and compelling reason to justify his release under U.S.S.G. §1B1.13(b)(3)(C) (Dkt. #1945 at pp. 17–18). Compassionate release due to family circumstances may be granted because of "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

U.S.S.G. § 1B1.13(b)(3)(C). Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *United States v. Shaw*, No. 4:15-CR-134-03, 2025 WL 2496156, at *5 (E.D. Tex. Aug. 29, 2025) (citing *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024)). Here, Defendant alleges his mother is widowed and terminally ill (Dkt. #1945 at p. 19). However, Defendant does not provide evidence that he is the only available caretaker for his mother, besides a conclusory statement that "[h]e is the only possible caregiver for his . . . mother" (Dkt. #1945 at p. 19). Moreover, Defendant argues that he is terminally ill, which contradicts his arguments that he must now care for another terminally ill family member. Thus, Defendant's family circumstances do not present an extraordinary and compelling reason justifying his release under U.S.S.G. §1B1.13(b)(3)(C).

**C. Defendant's Rehabilitative Efforts**

Finally, Defendant argues that "his commitment in prison to rehabilitation supports his motion to become his mother's end of life caregiver" (*See* Dkt. # 1945 at p. 17). Although these efforts, if true, are commendable, Defendant has not presented any specific accomplishments to the Court. *See United States v. Hisel*, No. 4:18-CR-45(1), 2022 WL 2012379, at *9 (E.D. Tex. June 3, 2022) ("Thus, although [Defendant] lists a number of commendable achievements and future goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case."). Moreover, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279. Thus, Defendant's alleged rehabilitation while in prison does not present an extraordinary and compelling reason justifying his release under U.S.S.G. §1B1.13(d).

* * *

In sum, there are no extraordinary and compelling reasons warranting Defendant's release. Neither his medical circumstances nor his family circumstances rise to a level justifying his discharge from prison under U.S.S.G. § 1B1.13(b)(1) and 1B1.13(b)(3), respectively. For these reasons, Defendant does not satisfy the "extraordinary and compelling reasons" requirement under 18 U.S.C. § 3582(c)(1)(A), and Defendant's Motion should be denied.

## III. The § 3553(a) Factors

Even if Defendant had shown extraordinary and compelling reasons that merit his release, the sentencing factors under 18 U.S.C. § 3553(a) weigh against granting his Motion. In weighing these factors, the Courts must address the seriousness of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, respect for the law, and providing a just punishment. *Shaw*, 2025 WL 2496156, at *11 (citing *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023)). Here, granting Defendant's Motion would undermine these factors.

First, Defendant pleaded guilty to Conspiracy to Possess with the Intent to Manufacture and Distribute a mixture or substance containing a detectable amount of methamphetamine (Dkt. #904). Defendant was a receiver and distributor for Los Caballeros Templarios, a drug cartel (Dkt. #1290 at p. 6). Defendant has acknowledged responsibility for 45 kilograms of detectable methamphetamine or 4.5 kilograms of actual methamphetamine (Dkt. #1290 at p. 5). This offense is serious in nature. Defendant's criminal record extends back to 1990 and includes multiple possession of controlled substance convictions, evading arrest, and aggravated assault with a deadly weapon (Dkt. #1290 at pp. 11–13). Defendant has illegally entered the United States at least four times (Dkt. #1290 at pp. 13–14). Defendant has demonstrated an impressive capacity for recidivism.

Also, his conviction for aggravated assault with a deadly weapon shows that he is a danger to the community if released. After an argument, Defendant followed his girlfriend to a convenience store, destroyed the glass door, and fired a gun into the store, injuring the store manager (Dkt. #1290 at p. 12). Defendant's record reflects that he would be a danger to the community if released.

Defendant has requested conversion to home confinement (Dkt. #1945 at p. 48). Not so. "Confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense." *Dawson v. Scott*, 50 F.3d 884, 890 (11th Cir. 1995) (quoting *United States v. Zackular*, 945 F.2d 423, 425 (1st Cir. 1991)). Allowing Defendant to return home would neither provide just punishment for his offense, deter criminal conduct, nor promote respect for the law, as considered by the 18 U.S.C. § 3553(a) factors.

Finally, in exchange for Defendant's guilty plea, the Government dropped two counts against Defendant: Conspiracy to Possess with the Intent to Distribute Cocaine and Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Dkt. #1290 at p. 5). Compassionate release at this time would undermine the fact that Defendant "received the benefit of a plea agreement in which additional charges/counts were dismissed after he accepted responsibility that could have resulted in a far lengthier sentence." *See United States v. Sessions*, No. 2:20-CR-00010-JRG-RSP-8, 2026 WL 266244, at *5 (E.D. Tex. Feb. 2, 2026).

After weighing the § 3553(a) factors, the Court finds that granting Defendant's Motion would ignore the seriousness of the offense, the defendant's history, the need to deter criminal conduct, the need to protect the public, and providing a just punishment. *Shaw*, 2025 WL 2496156, at *11. Accordingly, Defendant's Motion should be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Emergency Motion for Compassionate Release – Reduction in Sentence pursuant to 18 U.S.C. § 3582 (c)(1)(a) as Amended by the First Step Act of 2018 & Amendment 814 (Dkt. #1945) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 13th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE